IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re Enron Corporation Securities, Derivative & "ERISA Litigation | § § § § | MDL-1446 |
| MARK NEWBY, ET AL., | § § | |
| Plaintiffs | § § | |
| VS. | § § | CIVIL ACTION NO. H-01-3624 CONSOLIDATED CASES |
| ENRON CORPORATION, ET AL., | § § | |
| Defendants | § | |
| JOE H. WALKER, et al., | § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-03-2345 |
| ARTHUR ANDERSEN, LLP, et al., | § § | |
| Defendants. | § | |

## OPINION AND ORDER OF DISMISSAL

Pending before the Court in H-03-2345, asserting common-law claims for common law fraud, conspiracy, intentional infliction of emotional distress/outrageous conduct, negligent misrepresentation, and negligence under Tennessee law against former officers and directors of Enron Corporation ("Enron"), is Defendant Andrew Fastow's ("Fastow's") motion to dismiss Plaintiffs Joe H. Walker, Andrew H. Walker and Deborah C. Walker's (the "Walker Plaintiffs'")

First Amended Complaint[1] (instrument #244).  The Walker Plaintiffs have failed to respond.

## Standard of Review

### Standard of Review under Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) provides, "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller,

---

[1] The First Amended Complaint is instrument #240.

*Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974). "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009); *see also Keys v, Humana, Inc.*, ___ F.3d ___, No. 11-5472, 2012 WL 2505534, *2 (6th Cir. July 2, 2012).. Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its

face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.

In *Ashcroft v. Iqbal*, 129 S. Ct. at 1940, the Supreme Court, applying the *Twombly* plausibility standard to a *Bivens* claim of unconstitutional discrimination and a defense of qualified immunity for government official, observed that two principles inform the *Twombly* opinion: (1) "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." . . . Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."; and (2) "only a complaint that states a plausible claim for relief survives a motion to dismiss," a determination involving "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b). *Iqbal*, 129 S. Ct. at 1949. The plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief

. . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

While the sufficiency of a complaint under Rule 8(a)(2) may be challenged by motion under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, even if the defendant does not file such a motion, the court "has the authority to consider the sufficiency of a complaint on its own initiative." *Landavazo v. Toro Co.*, 301 Fed. Appx. 333, 336 (5th Cir. Dec. 5, 2008)(*citing Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006)("As a general rule, a district court may dismiss a complaint on its own for failure to state a claim.")), *cert. denied*, 129 S. Ct. 2417 (2009).

Even if a plaintiff fails to file a response to a motion to dismiss despite a local rule's mandate that a failure to respond is a representation of nonopposition, the Fifth Circuit has rejected the automatic granting of dispositive motions without responses without the court's considering the substance of the motion. *Watson v. United States*, 285 Fed. Appx. 140, 143 (5th Cir. 2008), *citing Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006), and *Johnson v. Louisiana*, 757 F.2d 698, 708-09 (5th Cir. 1985). "The mere failure to respond to a motion is not sufficient to justify a dismissal with prejudice." *Id.* Instead there should be a clear record of delay or contumacious conduct and a finding that lesser

sanctions would not serve the system of justice.  *Id., citing Luna v. Int'l Ass'n of Machinists & Aerospace Workers Local #36*, 614 F.2d 529, 531 (5th Cir. 1980).

As noted, on a Rule 12(b)(6) review, although generally the court may not look beyond the pleadings, the Court may examine  the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claim(s), as well as matters of public record.  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010), *citing Collins*, 224 F.3d at 498-99; *Cinel v. Connick*, 15 F.3d 1338, 1341, 1343 n.6 (5th Cir. 1994).  *See also United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003)("the court may consider . . . matters of which judicial notice may be taken").  Taking judicial notice of public records directly relevant to the issue in dispute is proper on a Rule 12(b)(6) review and does not transform the motion into one for summary judgment.  *Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. Jan. 25, 2011).  "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

The contents of Andrew Fastow's Declaration have been subject to reasonable dispute.  "A court may take judicial notice of related proceedings and records in cases before the same court." *MacMillan Bloedel Ltd. v. Flintkote Co.*, 760 F.2d 580, 587 (5th Cir. 1985). Courts regularly take judicial notice of documents filed in other cases, but not for the truth of the matters asserted in other lawsuits, but to establish the fact of the existence such litigation and of the document, which is not disputed.  *Id., citing Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *see also Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008); *McMunigal v. Bloch*, No. C-10-02765 SI, 2010 WL 5399219, *2 n.1 (N.D. Cal. Dec. 23, 2010(granting judicial notice of documents filed in another lawsuit for purposes of noticing the existence of the lawsuit, claims made in the lawsuit, and that various documents were filed, but not for the truth of the matters asserted therein); *Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)("[I]t is proper to take judicial notice of the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information without regard to the truth of their contents . . . . [emphasis in original]").

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United*

*States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied sub nom. Cloud v. United States*, 536 U.S. 960 (2002), *cited for that proposition in Baisden v. I'm Ready Productions*, No. Civ. A. H-08-0451, 2008 WL 2118170, *2 (S.D. Tex. May 16, 2008). *See also ASARCO LLC v. Americas Min. Corp.*, 382 B.R. 49, 57 (S.D. Tex. 2007)("Dismissal "'can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" [citation omitted]), *reconsidered in other part*, 396 B.R. 278 (S.D. Tex. 2008).

In addition to Rules 8(a) and 12(b)(6), fraud claims must also satisfy the heightened pleading standard set out in Federal Rule of Civil Procedure 9(b): "In allegations alleging fraud . . ., a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." A dismissal for failure to plead with particularity as required by this rule is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). The Fifth Circuit interprets Rule 9(b) to require "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.,* 407 F.3d 690, 696 (5th Cir. 2005). The Sixth Circuit also

requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state when and where the statements were made; and (4) explain why the statements were fraudulent. [citations omitted]." *Ind. State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942-42 (6th Cir. 2009).

"When a corporation is alleged to have made false representations, the court must [identify and] look to 'the state of mind of the corporate official or officials who make or issue the statement.' It follows that '[a] corporation can be held to have a particular state of mind [e.g., fraudulent intent] when that state of mind is possessed by a single individual.'" *7-Eleven Inc. v. Puerto Rico-7 Inc.,* Civ. A. No. 3:08-CV-00140-B, 2008 WL 4951502, *2 (N.D. Tex. Nov. 19, 2008), *quoting Southland Sec. Corp.*, 365 F.3d 353, 366-67 (5th Cir. 2004).

### Substantive Tennessee Law

Plaintiffs complain that based on "fraudulently inflated credit ratings and market performance created by Defendants' misrepresentations and wrongful conduct,"[2] they purchased bonds issued by Enron in November 2001. They assert the following causes of action under Tennessee law against the two remaining Defendants, Fastow and Richard Causey.

---

[2] First Amended Complaint (#240), ¶¶ 15 and 16.

*Fraud*

To state a claim for fraud under Tennessee law, a plaintiff must allege with particularity all of the following elements: "'(1) intentional misrepresentation of a material fact, (2) knowledge of the representation's falsity, (3) an injury caused by reasonable reliance on the representation,[3] and the requirement that the misrepresentation involve a past or existing fact.'" *Saltire Industrial, Inc. v. Waller, Lansden, Dortch & Davis, PLLC*, 491 F.3d 522, 526 (6th Cir. 2007), *quoting Kincaid v. SouthTrust Bank*, 221 S.W. 3d 32, 40 (Tenn. Ct. App. 2006). Under Tennessee law, the terms "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" have the same meaning and refer to the same cause of action. *Id., citing Concrete Spaces, Inc. v. Sender*, 2 S.W. 3d 901, 905 n.1 (Tenn. 1999). "To pass the particularity test [for pleading], the actors should be identified

---

[3] Whether a plaintiff's reliance on statements by the defendant is reasonable is usually a question of fact not appropriate for summary judgment. *City State Bank v. Dean Witter Reynolds, Inc.*, 948 S.W. 2d 729, 737 (Tenn. App. 1996); *Biancheri v. Johnson*, No. M200702861COAR3CV, *et al.*, 2009 WL 723540, *8 (Tenn. Ct. App. Mar. 18, 2009). Factors relevant to the determination of reasonableness include (1) the plaintiff's business expertise and sophistication; (2) the existence of longstanding business or personal relationships between the parties; (3) the availability of the relevant information; (4) the existence of a fiduciary relationship; (5) the concealment of the fraud; and (6) the opportunity to discover the fraud. *Id.; id.* Usually if parties are dealing on equal terms, the plaintiff is not justified in relying on representations where he has ready access to the means of knowledge. *Id.*

and the substance of each allegation should be pled." *Western Express, Inc. v. Brentwood Services, Inc.*, No. M2008-02227-COA-R3-CV, 2009 WL 3448747, *9 (Tenn Ct. App. Oct. 26, 2009), *citing Strategic Capital Resources, Inc. v. Dylan Tire Industries, LLC*, 102 S.W. 3d 603, 611 (Tenn. Ct. App. 2002)(a complaint fails the particularity test where "the allegations are only general and no particular defendant is identified as the one making the false and misleading statements.  At a minimum the actors should be identified and the substance of each statement should be plead.").

For a claim of fraud based on an intentional failure to disclose, or concealment, the plaintiff must allege (1) that the defendant concealed or suppressed a material fact, (2) that the defendant had a duty to disclose that fact to the plaintiff, (3) that the defendant intentionally concealed or suppressed that fact with the intent to deceive the plaintiff, (4) that the plaintiff was unaware of the fact and would have acted differently if it had known about the concealed fact, and (5) the plaintiff was damaged as a result of the concealment or suppression of the fact. *Saltire Industrial*, 491 F.3d at 527, *citing Justice v. Anderson County*, 955 S.W. 2d 613, 616 (Tenn. Ct. App. 1997).  "'[A] statement is material or involves a material fact if it will likely affect the conduct of a reasonable person.'" *Id., citing Patel v. Bayliff*, 121 S.W. 3d 347, 353 (Tenn. Ct. App. 2003).

There can be no tort of fraudulent concealment without a duty to disclose.  *Id.*  The Tennessee Supreme Court has opined,

> "The equitable doctrine of fraudulent concealment is based upon the principle of fair dealing.  Where there is no dealing between the parties, there can be no concealment.  And, even where the parties have had business transactions, it is universally held that mere silence does not constitute fraudulent concealment."

*Id.* at 527*, quoting Patten v. Standard Oil Co. of La.*, 1 Beeler 438, 55 S.W. 2d 759, 761 (Tenn. 1933).  Moreover, the Supreme Court further elaborated,

> "There must be a concealment, and the silence must amount to fraud.  Concealment in this sense may consist in withholding information asked for, or in making use of some device to mislead, thus involving act and intention.  *The term generally infers also that the person is in some way called upon to make a disclosure.*  It may be said, therefore, that, in addition to a failure to disclose known facts, there must be some trick or contrivance intended to exclude suspicion and prevent inquiry, or else that there must be a legal or equitable duty resting on the party knowing such facts to disclose them.

*Id.* (emphasis added) at 528, quoting *Patten*, 55 S.W. 2d at761.

A duty to disclose under Tennessee law arises in only three circumstances:  "1.  where there is a previous definite fiduciary relation between the parties[;] 2.  Where it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other[; and] 3.  Where the contract or transaction is intrinsically fiduciary and calls for perfect good faith", e.g., a contract of insurance.  *Id., citing Justice*, 955 S.W. 2d at 616-17.

***Conspiracy to Defraud***

Common law conspiracy to defraud under Tennessee law "is defined as a 'combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means.'" *Brown v. Birman Managed Care, Inc.*, 42 S.W. 62, 67 (Tenn. 2001), *quoting Chenault v. Walker*, 36 S.W. 3d 45, 52 (Tenn. 2001). *See also Dale v. Thomas H. Temple Co.*, 22 Beeler 69, 90, 208 S.W. 2d 344, 353-54 (Tenn. 1948)("A 'conspiracy to defraud' on the part of two or more persons means a common purpose, supported by a concerted action to defraud, that each has the intent to do it, and that it is common to each of them, and that each has the understanding that the other has that purpose.  The agreement need not be formal, the understanding may be a tacit one, and it is not essential that each conspirator have knowledge of the details of the conspiracy. [citations omitted]"). "[E]ach conspirator is responsible for everything done by his confederates which the execution of the common design makes probable as a consequence. . . . [I]t follows that each is liable for all damages naturally flowing from any wrongful act of a coconspirator in carrying out such common design." *Id.,* 22 Beeler at 90-91, 208 S.W. 2d at 354.  "The elements of a cause of action for civil conspiracy are:  (1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose,

or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *Kinkaid v. SouthTrust Bank*, 221 S.W. 3d 31, 38 (Tenn. Ct. App. 2006).  The agreement may be implied from the conduct of the conspirators. *Stanfill v. Hardney*, No. M2004-02768-COA-R3-CV, 2007 WL 2827498, *8 (Tenn. Ct. App. Sept. 27 2007), *citing Restatement (Second) of Torts* § 876 CMT. a.  "A conspirator may be liable if he or she understands the general objectives of the scheme, accepts them, and agrees, explicitly or implicitly, to do his or her part to further them.  *Stanfill*, 2007 WL 2827498 at *8.  Conclusory allegations unsupported by material facts are insufficient to state a claim for conspiracy.  *Kinkaid*, 221 S.W. 3d at 38.

Under Tennessee law "participation in a civil conspiracy is not, by itself an actionable tort"; "a civil conspiracy claim requires 'the existence of an underlying tort or wrongful act committed by one or more of the conspirators in furtherance of the conspiracy." *Nippert v. Jackson*, ____ F. Supp. 2d ____, Case No. 3:09-cv-1068, 2012 WL 899628, *9 (M.D. Tenn. Mar. 15, 2012).  *See also Greene v. Brown & Williamson Tobacco Corp.*, 72 F. Supp. 2d 882, 887 (W.D. Ten. 1999).  Here fraud is the alleged underlying tort.  Where the underlying tort claim fails, the conspiracy claim also fails.  *Greene*, 72 F. Supp. 2d at 887, *cited for that proposition, Campbell v. BNSF Ry. Co.*, 600 F.3d 667, 677 (6th Cir.

2010); *Ponthieux v. Danek Medical, Inc.*, 1999 WL 33486689, *10 (W.D. Tenn. May 28, 1999)(plaintiff "must also establish all the elements of the underlying fraud because a 'plaintiff may not recover for conspiracy to defraud when fraud cannot be established.'"), *citing Pusser v. Gordon*, 684 S.W. 2d 639, 642 (Tenn. Ct. App. 1984)("It is the civil wrong resulting in damage and not the conspiracy which constitutes the cause of action for conspiracy to defraud.").

### *Negligent Misrepresentation*

Tennessee has adopted Section 552 of the *Restatement (Second) of Torts* as the basis for a claim of negligent misrepresentation. *Jackson v. Alsthom Power, Inc.*, 193 Fed. Appx 505, 508 (6th Cir. Aug. 24, 2006), *citing Robinson v. Over*, 952 S.W. 2d 423, 427 (Tenn. 1997).  To state a claim for negligent misrepresentation under Tennessee law, the plaintiff must allege that (1) the defendant was acting in the course of his business, profession, or employment, or in a transaction in which he had a pecuniary interest; (2) the defendant provided false information meant to guide others in their business transactions; (3) the defendant did not exercise reasonable care in obtaining or communicating the information; and (4) the plaintiff justifiably relied on this information. *Id., citing id.* Actual reliance is required. *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 404 (6th Cir. 1997).

"Except as stated in Subsection (3), the liability in Subsection (1) "is limited to loss suffered (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction." *Restatement (Second) of Torts* § 552(2).  Liability may be imposed "'only in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended to supply it for that purpose.'" *Akins v. Edmondson*, 207 S.W. 3d 300, 307 (Tenn. Ct. App. 2006), *citing* § 552 cmt. (a).  "'It is not enough that the maker merely knows of the ever-present possibility of repetition to anyone, and the possibility of reliance upon it . . . .'" *Id., citing id.* Subsection (3) states, "The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them." *See PNC Multifamily Capital Institutional Fund XXVI Ltd. Partnership v. Bluff City Community Dev. Corp.*, No. W2011-00325-COA-R#-CV,  2012 WL 1572130, *16-16 (Tenn. Ct. App. May 4, 2012)(Tennessee has adopted Section 552), *citing Robinson v. Omer*, 952 S.W. 2d 423 (Tenn. 1997).  The plaintiff must allege who made

the misrepresentations and when they were made.  *Western Express*,
2009 WL 3448747 at *10.

Even when there is no contractual privity between plaintiff
and defendant or a business transaction at stake, a defendant can
be liable for negligent misrepresentation when

> (1) the defendant is acting in the course of his
> business, profession, or employment, or in a transaction
> in which he has a pecuniary (as opposed to gratuitous)
> interest, *and*
> (2) the defendant supplies faulty information meant to
> guide others in their business transaction; *and*
> (3) the defendant fails to exercise reasonable care in
> obtaining or communication the information; *and*
> (4) the plaintiff justifiably relies on the information.

*John Martin Co., Inc. v. Morse/Diesel, Inc.*, 819 S.W. 2d 428, 431
(Tenn. 19991); *Robinson v. Omer*, 952 S.W. 2d 423, 427 (Tenn. 1997).
"The defendant is liable only to those, whether in contractual
privity or not, for whose benefit and guidance the information is
supplied.  The information may be either direct or indirect.  In
that regard, the forseeability of use is critical to liability."
*John Martin*, 819 S.W. 2d at 431-32.  Since the misinformation is
negligently rather than intentionally supplied, courts carefully
limit liability to those whose use of the information is reasonably
foreseeable.  *Id.* at 432, citing *Restatement (Second) of Torts* §
552, Comments (1997)("By limiting the liability for negligence of
a supplier of information to be used in commercial transactions to
cases in which he manifests an intent to supply the information for

the sort of use in which plaintiff's loss occurs, the law promotes the important social policy of encouraging the flow of commercial information upon which the operation of the economy rests."). Applying this test, the Tennessee Supreme Court has allowed clients to recover from attorneys. *Robinson*, 952 S.W. 2d at 427. Moreover recovery has been permitted solely when the advice or information negligently offered was given in a commercial or business transaction for guidance of others in their business transactions. *Id.* at 427-28*, citing Shelby v. Delta Air Lines, Inc.*, 842 F. Supp. 999, 1015 (M.D. Tenn. 1993)("The Tennessee cases involving negligent misrepresentation all involve commercial transactions.").

### *Negligence*

The five essential elements of a cause of action for negligence under Tennessee law are "'(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate or legal cause.'" *Downs ex rel. Downs v. Bush*, 263 S.W. 3d 812, 819 (Tenn. 2008), *quoting McCall v. Wilder*, 913 S.W. 2d 150, 153 (Tenn. 1995). "A duty of care is 'the legal obligation owed by the defendant to plaintiff to conform to a reasonable standard of care for the protection against unreasonable risks of harm.'" *Id., quoting id.* The duty of care owed by the defendant to a plaintiff is that of

reasonable care under all the circumstances.  *Doe v. Lander Constr. Co.*, 845 S.W. 2d 173, 177 (Tenn. 1992).  Long recognized under common law, the individual has a duty to exercise reasonable care in his conduct in order to prevent unreasonable risks of harm from developing.  *Id., citing Turner v. Jordan*, 957 S.W. 2d 815, 818 (Tenn. 1997)("a person has a duty to use reasonable care to refrain from conduct that will foreseeably cause injury to others").

Individuals have a duty to refrain from actions that cause an unreasonable risk of harm to others, but usually the law does not impose an affirmative duty to aid or protect others or prevent the harm.  *Id., citing Draper v. Wester field*, 181 S.W. 3d 283, 291 (Tenn. 2005).  Tennessee courts have recognized an exception to the "no duty to act" rule arises from certain special relationships to another person who is the source of the danger or who is foreseeable at risk from the danger, e.g., innkeeper and guest, common carrier and passenger, possessors of land and guests, social host and guest, and one having custody over another.  *Id.* at 819-20.  One can take on an affirmative duty by aiding or rescuing another person.  *Id.* at 820.

The Tennessee Supreme Court set out the analysis for determining whether a duty of care was breached in *Doe v. Lander Const.*, 845 S.W. 2d at 178 (citations omitted):

If the defendants failed to exercise reasonable care under the circumstances then they breached their duty to

plaintiffs.   The term reasonable care must be given meaning in relation to the circumstances.  Ordinary, or reasonable, care is to be estimated by the risk entailed through probable dangers attending the particular situation and is to be commensurate with the risk of injury.  The risk involved is that which is foreseeable; a risk is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom is owed a duty is probable.   Foreseeability is the test of negligence.  If the injury which occurred could not have been reasonably foreseen, the duty of care does not arise, and even though the act of the defendant in fact caused the injury, there is no negligence and no liability.  "[T]he plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that some action within the [defendant's] power more probably than not would have prevented the injury."  Foreseeability must be determined as of the time of the acts or omissions claimed to be negligent.

Whether the defendant owed the plaintiff a duty of care is a question of law for the court to decide.  *West*, 172 S.W. 3d at 551; *Downs*, 263 S.W. 3d at 821.  Nevertheless, the nature of the duty that a defendant may owe a plaintiff may depend on the resolution of fact issues.  *Downs*, 263 S.W. 3d at 821.  Whether a duty of care has been breached in a question of fact.  *Biscay v. Brown*, 160 S.W. 3d 462, 478 (Tenn. 2004); *Patterson-Chair v. Wilson World Hotel-Cherry Road, Inc.*, 139 S.W. 3d 281, 285 (Tenn. Ct. App. 2003).

### *Intentional Infliction of Emotional Distress/Outrageous Conduct*

Intentional infliction of emotional distress and outrageous conduct have been used as synonyms for the same cause of action.  *Rogers v. Louisville Land Co.*, ___ S.W. 3d ___, No. E2010-00991-

SCC-R11-CV, 2012 WL 1356664, *4 (Tenn. Apr. 19, 2012), *citing Bayed v. Wells*, 936 S.W. 2d 618, 622 n.3 (Tenn. 1997), *citing Mooched v. J.C.D. Penney Co.*, 555 S.W. 2d 713, 717 (Tenn. 1997). Because of potential confusion, "outrageous conduct" should properly be used only to refer to an element of intentional infliction of emotional distress, as has been recognized recently by courts and litigants. *Id.*

The three elements of intentional infliction of emotional distress under Tennessee law are that "the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Id.* For the first element, either intentional or reckless conduct will satisfy. *Id.* Although expert evidence may be the most effective method of showing the existence of the third element, severe mental injury, it is not mandatory because the flagrant and outrageous nature of the defendant's conduct evidences that the distress existed. *Id.* at *7. Recovery should not be for "'fright or fear alone,'" but should be limited to "'serious or severe emotional injuries which disable a reasonable, normally constituted person from coping adequately with the stress.'" *Id.* at *6 (citations omitted).

In *Rogers*, 2012 WL 1356664 at *7, the Tennessee Supreme Court quotes the *Restatement (Second) of Torts* § 46 cmt. j, "often cited

by our courts in a discussion of this area of law," to define what constitutes "severe mental injury.":

> Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like.  It includes all highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea.  It is only where it is extreme that liability arises.  Complete emotional tranquillity is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people.  The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and duration of the distress are factors to be considered in determining its severity.  Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is itself important evidence that the distress has existed.

The Tennessee Supreme Court in *Rogers, id.* at *9, rejected comment j's "hyperbolic" "unable-to-cope" and "no-reasonable-person-could-be-expected-to-endure-it" standards, reasoning that over time most people can cope with almost anything, some with the help of medication and therapy, or can endure anything that does not kill or completely incapacitate them.  It suggests that evidence that the plaintiff suffered physiological or psychological symptoms of emotional distress, sought medical or professional treatment, or incurred any significant impairment of her daily functioning resulting from the defendants' conduct, as well as their duration and intensity, are pertinent factors in determining whether a plaintiff has suffered a serious mental injury.  *Id.* at *8-9.

### The Allegations Specifically Naming Fastow

The Complaint, which at 14 pages (including the certificate of service) is strikingly short for a complaint addressing Enron's alleged fraud, asserts the following very limited allegations specifically identifying Fastow.

In ¶ 7 it asserts that Enron's Chief Risk Officer, Richard B. Buy, "was instructed by Enron Board of Directors to review and approve transactions between Enron and LJM1, LJM2, and/or LJM3 because [of] the involvement of another Enron officer, Chief Financial Officer Andrew S. Fastow, with these various entities. Such oversight by Buy was required because Fastow's involvement with these various entities and transactions actually violated Enron's code of conduct."

Paragraph 10, containing the only remaining allegations specifically against Fastow, asserts:

> Andrew S. Fastow was the Chief Financial Officer of Enron. His tortious conduct was outlined in part in a Declaration dated and filed September 25, 2006 (*Newby* No. 5048). In this Declaration, Fastow outlines in some detail his and others' involvement with SPEs and SPV's, as well as other transactions, and describes how these various transactions and accounting maneuvers were used to fraudulently manipulate Enron's publicly reported financial results to mislead investors, artificially inflate the price of Enron's stock, and fraudulently maintain Enron's credit rating. Plaintiffs adopt and incorporate by reference Fastow's Declaration as allegations of his and others' wrongdoing.

This Court would point out that the referenced and incorporated Fastow Declaration, with its numerous attached exhibits, is 175 pages long. Plaintiffs fail to cite to a single

line, particular passage, or specific exhibit and do not discuss any part of it in the Amended Complaint.   This Court is not required to find facts to support, no less plead, the Walker Plaintiffs' complaint for them.   Moreover Fastow's Declaration is also conclusory and general, without facts that would demonstrate the essential elements of the causes of action asserted here, as will be discussed.

Paragraph 13 quotes a prefatory statement to the 2000 Enron Annual Report, which the complaint claims is "similar" to those in Enron's annual reports for 1997, 1998, and 1999:

> The following financial statements of Enron Corp. and subsidiaries (collectively Enron) were prepared by management, which is responsible for their integrity and objectivity.   The statements have been prepare[d] in accordance with generally accepted accounting principles. . . . The system of internal controls of Enron is designed to provide reasonable assurance as to the reliability of financial statements . . . . This system is augmented by written policies and guidelines and the careful selection and training of qualified personnel . . . . Enron assessed its internal control system as of December 31, 2000, 1999, and 1998, relative to current standards of control criteria.   Based upon this assessment, management believes that its system of internal controls was adequate during the periods to provide reasonable assurance as to the reliability of financial statements. . . .

Not only are all the allegations abstract and conclusory, but the complaint does not provide facts to demonstrate that any of these statements were false.   The same is true of the generally

referenced "SPEs, SPVs, transactions, assurances and financial statements" or that Enron's performance and ratings were artificially inflated.   The complaint merely claims, "These prefatory statements, as well as the financial statement[s] that follow them, are false. As officers of Enron, Buy, Causey, Fastow, McMahon, and Whalley are part of management and are responsible for these false prefatory statements as well as the false financial statement[s] that follow."

### Fastow's Motion to Dismiss (#244)

Fastow argues that the Amended Complaint fails to state a claim against him for fraud with the particularity required by Rule 9(b) for several reasons.   The amended pleading "makes blanket assertions of fraud and points generally to Enron's 'financial statements' and 'SEC filings' [from 1997-2000] without identifying any specific statement allegedly made by Fastow."   It therefore also fails to state the who, what, where, and when required for a fraud claim by Rule 9(b) nor explain how any statement by Fastow was fraudulent.   The Walker Plaintiffs do not identify any specific representations and show what they are and why they are fraudulent, nor state when they were made or who made them.   Nor do they identify Fastow as the maker of any particular statement.[4]   The

---

[4] Although Fastow cites to cases that reject the group pleading doctrine, that doctrine relates to cases under the Private Securities Litigation Reform Act ("PSLRA"), which is not at issue in this suit.   *Southland Secs. Corp. v. INspire Ins. Solutions,*

Walker Plaintiffs assert that Fastow was "involved" in "Special Purpose Entities" ("SPEs") and "other transactions" that were used to fraudulently manipulate Enron's publicly reported financial results to mislead investors, artificially inflate the price of Enron's stock, and fraudulently maintain Enron's Credit Rating." Amended Complaint, ¶ 10.  These conclusory allegations do not meet the requirements of Rule 9(b).  They do not identify which representations in which financial statement or SEC filing are allegedly false, the date each was made, the identity of the person making them or their content and how they were fraudulent.  There are also no factual allegations to show that Fastow intended to defraud the Walker Plaintiffs or that he intended to supply them with information that he knew they would rely and on they actually or reasonably relied, essential elements of Plaintiffs' fraud claim.  The Walker Plaintiffs do not allege that Fastow made any misrepresentations to any of them or that they had any communications with Fastow at any time.  This Court fully agrees.

Nor does the complaint assert that Fastow made misrepresentations to others with the intention that the Walker

---

*Inc.*, 365 F.3d 353, 365 (5th Cir. 2004)(allegations against a group of defendants are not "properly imputable to any particular individual defendant unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded."); *Zuckerman v. Foxmeyer Health Corp.*, 4 F. Supp. 2d 618, 622 (N.D. Tex. 1998)("[T]he plaintiff is obligated to distinguish among those they sue and enlighten each defendant as to his or her part in the alleged fraud.").

Plaintiffs would rely on such statements.  "As a general matter, the misrepresentation must be made to the plaintiff and the plaintiff must reasonably rely to his or her detriment on the misrepresentation.  Although liability may be extended to third persons, this is only done when there is evidence that the defendant made the misrepresentation with the intention and understanding that the third parties would rely on the information."  *Jenkins v. Brown*, M2005-02022-COA-R3CV, 2007 WL 4372166, *13 (Tenn. Ct. App. Dec. 14, 2007), *citing Speaker v. Cates Co.*, 879 S.W. 2d 811, 816 (Tenn. 1994), and *Arcata Graphics Co. v. Heidelberg Harris, Inc.*, 874 S.W. 2d 15, 23 (Tenn. Ct. App. 1993).  No facts are alleged showing that Fastow knew of or could have reasonably foreseen the Walker Plaintiffs, members of the general public, relying on any false statements.

Plaintiffs incorporate by reference Fastow's September 25, 2006 sworn Declaration (#5048 in *Newby v. Enron*, H-01-3624), but, as noted *supra*, fail to discuss or identify any particular statement by Fastow that would satisfy Rule 9(b) pleading requirements for fraud, no less explain how it is fraudulent.

Moreover Fastow maintains that Plaintiffs' negligent misrepresentation claim fails because Plaintiffs did not show that they were part of "limited group of persons for whose benefit and guidance [the defendant] intends to supply the information."  *In re*

*Sofamor*, 123 F.3d at 404.   Plaintiffs have alleged that the misstatements in Enron's financial statements and SEC filings were disseminated to the public at large instead of a limited group. Amended Complaint ¶ 3.

Fastow further argues that Plaintiffs' fraud, conspiracy to defraud and negligent misrepresentation claims fail because they do not allege any actual reliance by Plaintiffs on any specific statement by Fastow.   *Edwards v. Bruce*, 1996 WL 38294, *8 (Tenn. Ct. App. July 10, 1996)(a required element of fraudulent or negligent misrepresentation under Tennessee law is actual reliance on the misrepresentation of material fact); *Edmondson v. Coates*, 1992 WL 108717, *15 n.1 (Tenn. Ct. App. May 22, 1992)(reasonable reliance, i.e., actual reliance, is a required element of fraudulent misrepresentation).   Plaintiffs do not connect their November 2001 decisions to purchase Enron bonds to any communications, direct or indirect, with Fastow.   Even if they had actually relied on a specific statement by Fastow, such reliance was unreasonable since there were previous public disclosures about Enron's huge third-quarter losses and the SEC investigation of Enron's business and accounting practices.   Under Tennessee law, where a party has "notice of potential harm or damage" in connection with an alleged misrepresentation and fails to investigate or otherwise take precautions against that risk, his reliance is "rendered unreasonable" and he cannot recover as a

matter of law.  *Coffey v. Foamex, L.P.*, 2 F.3d 157, 162 (6th Cir. 1993), *citing Atkins v. Kirkpatrick*, 823 S.W. 2d 547, 552 (Tenn. App. 1991).[5]   Fastow emphasizes that it is undisputed that on October 16, 2001 Enron issued a press release reporting that it had suffered a $638,000,000 loss in its third quarter and was taking a $1.01 billion after-tax charge to its earnings.   It is also undisputed that on October 31, 2001 Enron announced that the SEC inquiry into Enron's use of SPEs, pre-pays, and structured finance transactions had been upgraded to a formal investigation.   Fastow requests the Court to take judicial notice of these announcements.

---

[5] *See also Bass v. Janney Montgomery Scott, Inc.*, 210 F.3d 577, 589 (6th Cir. 2000), *quoting Cook & Nichols, Inc. v. Peat, Marwick, Mitchell & Co.*, 480 S.W. 2d 542, 545 (Tenn. Ct. App. 1971), opined that under Tennessee law,

> "[g]enerally, one who is injured by the wrongful or negligent act of another, whether by tort or breach of contract, is bound to exercise reasonable care and diligence to avoid loss or to minimize or lessen the resulting damage, and to the extent that his damages are the result of active and unreasonable enhancement thereof, or due to his failure to exercise such care and diligence, he cannot recover.

Nevertheless, "[g]enerally, a party dealing on equal terms with another is not justified in relying upon representations where the means of knowledge are easily within his reach." *Id.*  Enron's pronouncements, discussed *supra*, were not clear notice of financial disaster.  Moreover, here the parties were not on equal terms, with Plaintiffs being unsophisticated and inexperienced investors of highly questionable ability to understand one of the most complex corporate frauds that experts had difficulty unraveling.  The Court finds that the issue of reliance is fact intensive and does not agree with Fastow's argument that Plaintiff's reliance was per se unreasonable.

Fastow was also terminated on October 24, 2001.  Thus in light of such public disclosures, Fastow contends that it was unreasonable that the Walker Plaintiffs relied on any prior alleged misrepresentations about the strengths of Enron finances when they purchased the Enron-issued bonds in November 2001.

As for the negligence and negligent misrepresentation claims, Fastow contends that he did not owe Plaintiffs a duty of care because there was no contractual or other relationship between Fastow and the Walker Plaintiffs, potential bond purchasers, that would create such a duty.  *In re Coleco Sec. Litig.*, 591 F. Supp. 1488, 1493 (S.D.N.Y. 1984)(dismissing negligent misrepresentation claim premised on alleged duty of care owed by corporate officers and directors to "all pre-existing and potential shareholders" because "Plaintiffs have put forth no support for an extension of director's liability to the investing community, nor are we aware of any.").  Furthermore, Fastow points out that all of the vaguely alleged negligent misrepresentations in Enron's financial statements and SEC filings occurred, and all of the allegedly negligent "transactions" and "financial statements" were completed, before the Walker Plaintiffs purchased their bonds issued by Enron. Amended Complaint ¶ 22 ("In each of the years 1997-2000 and the first half of the year 2001 . . . .), ¶ 38.  Thus the Walker Plaintiffs were not holders of the Enron-issued bonds when Fastow was allegedly negligent; instead they were only potential investors

to whom no legal duty was owed.  *Steiner v. Shawmut Nat. Corp.*, 766
F. Supp. 1236, 1247 (D. Conn. 1991)(dismissing negligent
misrepresentation claim under Connecticut law[6] where plaintiffs
were "prospective investors to whom defendants owed no duty and
whose reliance could not have been known by the defendants").

Next Fastow maintains that the Walker Plaintiffs fail to state
a claim for intentional infliction of emotional distress because
Fastow's alleged actions do not constitute outrageous conduct as a
matter of law.  Plaintiffs have not alleged facts showing that
Fastow acted recklessly "in deliberate disregard of a high degree
of probability that [severe] emotion distress will follow" from
Fastow's purported conduct and that he proceeded nevertheless.  *Doe
1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W. 3d
22, 40 (Tenn. 2005)("recklessness requires a higher degree of fault
than simple negligence"), *citing Tommy's Elbow Room v. Kavorkian*,
727 P.2d 1038, 1044 (Alaska 1986).  "The recklessness element
requires the defendant to be aware of, but consciously disregard,
a substantial and unjustifiable risk of such a nature that its
disregard constitutes a gross deviation from the standard of care
which, under all circumstances, an ordinary person would have
exercised."  *Id., citing Hodges v. S.C. Topf & Co.*, 833 S.W. 2d

---

[6] The Court notes that Connecticut law, unlike Tennessee law,
requires privity or actual knowledge by defendants of reliance for
a negligent misrepresentation claim.  *Id.*

896, 901 (Tenn. 1992).  Although Plaintiffs have alleged that Fastow was involved in SPEs and "other transactions" which he used to "fraudulently manipulate Enron's publicly reported financial results to mislead investors, artificially inflate the price of Enron's stock, and fraudulently maintain Enron's credit rating" (Amended Complaint ¶ 20), the allegations may assert tortious or criminal conduct, but not such extreme conduct that "goes beyond all bounds of decency" and is regarded as "atrocious and utterly intolerable in a civilized community."  *See, e.g., Mosko v. Defilippo*, No. 91-10675-Z, 1991 WL 191211, *3 (D. Mass. Sept. 10, 1991)(most courts examining whether a securities broker's churning constitutes intentional infliction of emotional distress have decided such conduct is "not sufficiently outrageous" to support intentional infliction of emotional distress claim); *Jacobson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 605 F. Supp. 510, 512-13 (W.D. Pa. 1984)(same under Pennsylvania law), *aff'd in part, rev'd in part on other grounds*, 482 U.S. 923 (1987), *vacated*, 482 U.S. 923 (1987), *on remand*, 824 F.2d 287 (3d Cir. 1987)(vacating district court's opinion); *LeCroy v. Dean Witter Reynolds, Inc.*, 585 F. Supp. 753, 763-67 (E.D. Ark. 1984)("under Arkansas law, mere fraud in connection with the sale of securities does not ipso facto make out a prima facie case for intentional infliction of emotional distress"); *Malandris v. Merrill Lynch, Pierce, Fenner & Smith*, 703

F.2d 1152, 1159-66 (10th Cir. 1981)(affirming jury's finding of intentional infliction of emotional distress where account executive took advantage of plaintiff's lack of education, made investments contrary to plaintiff's express wishes, induced plaintiff's husband to forge plaintiff's signature on documents relating to a margin account, threatened plaintiff's husband with jail when he tried to terminate the business relationship, and continued an extended course of investment counseling that caused plaintiff to incur substantial financial losses), *cert denied*, 464 U.S. 824 (1983).

In sum he asks the Court to dismiss all the claims against him for failure to state a claim under Rules 9(b) and 12(b)(6).

### Court's Decision

A review of the First Amended complaint makes patently clear that the Amended Complaint violates central proscriptions of *Twombly, Iqbal,* and their progeny and is fatally vague and general and thus fails to state adequately  any of the proffered causes of action.  "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 545.  "[T]hat a court must accept as true all of the allegations contained in a complaint in inapplicable to legal conclusions.  Threadbare recitals of all the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Iqbal*, 556 U.S. at 678.  As one example of these deficiencies, which pervade the entire pleading, the Court quotes paragraph 8 attempting to plead the same five causes of action against Richard A. Causey, the claims against whom will be addressed subsequently:

> Richard A. Causey was Enron's Chief Accounting Officer.  He, too, was tasked by the Board of Directors to review and approve any transactions between Enron and LJM1, LJM2, and/or LJM3.  Like Buy, Causey signed off on multiple improper transactions with these SPEs and/or SPVs, also despite receiving criticism regarding his approval process by Enron's legal counsel.  Like Buy, Causey, through his approval, participated in these improper transactions that masked Enron's true financial condition and improved its financial statements.  Causey participated in certain tax transaction with Deutsche Bank between 1997 and 2001.  These transactions had the effect of increasing Enron's reported earnings and fund flow from operations and materially impacted Enron's financial statements.  Mr. Causey gave presentations to Enron's Management Committee that these tax structures required Enron to represent it was in certain businesses that it really was not in.  The result of these transactions was that Enron's reported earnings were increase.  Additionally, Causey signed many of Enron's false financial statements filed with the SEC, including Enron's April 2, 2001 10-K and May 15, 2001 10-Q, among others.  By signing these statements, Causey adopted the false statements contained within them.  Like Buy, Causey took no action to undo or repudiate the SPE/SPV or tax transactions, to correct the false information in the financial statements or to inform anyone of these errors.

Nowhere in the complaint do the Walker Plaintiffs address particular statements, identify who said or wrote them, and show why they were fraudulent.  Rather the Walker Plaintiffs make conclusory assertions such as those in paragraph 5:

During the years 1997-2001, the officers and directors of Enron artificially inflated Enron's credit ratings and market performance by intentionally, fraudulently, recklessly, and/or negligently publishing and filing with the Securities and Exchange Commission ("SEC") materially false and misleading financial reports. These statements fraudulently increased Enron's net income and equity and reduced its debt.

The Walker Plaintiffs methodically cite the elements of each claim, but fail to assert supporting facts from the circumstances forming the basis of this case. For example, regarding fraud, in ¶ 22 they allege,

In each of the years 1997-200 and during the first half of the year 2001, Defendants knowingly, recklessly, and/or without belief in their truth made false representations of material fact in each of the public filings with SEC, in each of the other financial reports and/or statements that included the fraudulent information that has now been withdrawn and restated, and attempted and did manipulate various transactions and accountings as outline above to manipulate the apparent value and creditworthiness of Enron as outlined above.

For intentional infliction of emotional distress the whole of ¶ 29 states, "The wrongful conduct of defendants was so egregious to rise to the level of outrageous conduct."  For conspiracy paragraph 26 pleads,

Defendants entered a civil conspiracy to create and publish false financial statements and other information regarding Enron in order for each Defendant to increase his or her financial gain.  Defendants are highly educated and have significant experience in corporate oversight and/or experience to recognize and understand the impropriety of Enron's concocted financial information, yet each Defendant remained silent and continued participation in the scheme.  Certain defendants' knowledge and overt acts are outlined above.

For negligent misrepresentation the amended Complaint in ¶¶ 32-35 again state only bare-bones elements:

> 32.  In undertaking the wrongful conduct outlined above, Defendants supplied materially false information to Plaintiffs, either directly or through an agent, for the guidance of Plaintiffs in their business transactions. Defendants made these false statements in the course of their business, in which they had a pecuniary interest.
> 33.  In undertaking the wrongful conduct outlined above, Defendants failed to exercise reasonable care and/or competence in obtaining and/or communicating the financial condition of Enron to Plaintiffs, either directly or through an agent.
> 34.  Plaintiffs, potential purchasers of Enron bonds were the type of persons for whose guidance and benefit the Defendants intended the false financial information. This information was intended by Defendants to induce reliance upon it in attracting creditors for Enron.
> 35.  Plaintiffs were reasonable in their reliance on the false information . . .
> 36.  The wrongful conduct of Defendants in making and publishing the above false information rose to the level of recklessness in that Defendants were aware of, but consciously disregarded a substantial and unjustifiable risk of injury to creditors such as Plaintiffs . . . .

None of the complaint's assertions that details were alleged earlier is true.  The complaint throughout is vague, conclusory, and lacking in specific facts of the circumstances giving rise to this litigation.  Given the overwhelming amount of material published on the Enron fraud long before the Amended Complaint was filed on November 4, 2011, there is no justification for the lack of specific facts in this document.

Furthermore for each of the causes of action the Walker Plaintiffs have failed to allege concrete facts showing essential elements.  For example, for fraud there is no identification of an

specific statement, not to mention of the who, what, when, where, and why fraudulent.   If they intend to allege fraudulent concealment, they have not identified and shown the source for any duty to disclose to possible bond investors at the time.   Because they fail to state a claim for fraud, their claim for conspiracy to defraud also fails.   Their claim for negligent misrepresentation fails because not only do they fail to identify a specific statement (and the who made it, when, and where), but they do not show that Plaintiffs are part of a "limited group of persons for whose benefits and guidance" Fastow, or any other defendant, "intended to supply information in Enron's financial statements and SEC filings.   There are no facts alleged to show justifiable reliance.   Plaintiffs also fail to identify a duty of care to the Walker Plaintiffs or any relationship between Fastow and them that might give rise to such a duty.   Their intentional infliction of emotional distress claim lacks facts identifying clearly and specifically what Fastow, as differentiated from any other Defendant, did, no less showing that his conduct was outrageous. Nor are there any facts pleaded to show serious mental injury to the Walker Plaintiffs.

Thus the Court finds dismissal of the claims against Fastow under 12(b)(6) fully warranted.

### Remaining Defendants

According to the docket sheet, the only remaining Defendants are Linda Lay, as Executrix for the Estate of her deceased husband Kenneth Lay and Richard A. Causey ("Causey").

On September 16, 2006 the Court granted (#113) the Walker Plaintiffs' unopposed motion under Rule 25(a)(1) (#105) to substitute Linda Lay, for her husband, Kenneth L. Lay. Although the motion stated that Plaintiffs conferred with Linda Lay's counsel, George R. Gibson, who was not opposed, neither Mr. Gibson nor anyone else was entered as her counsel since, nor has she made an appearance. Moreover, Plaintiffs filed their Amended Complaint (#240) on November 4, 2011. Nowhere in the Complaint is either Kenneth L. Lay or Linda L. Lay mentioned. Accordingly, the Court finds that Plaintiffs no longer assert claims against her or her husband.

Causey, represented by counsel, did along with other Defendants challenge the initial complaint with a motion for more definite statement, and the Court ordered Plaintiffs to replead. Causey subsequently filed an answer (#242) to the First Amended Complaint on November 23, 2011, but nothing more. Nevertheless the same, very basic deficiencies in pleading claims against Fastow under long established federal rules also characterize the claims against Causey. Plaintiffs have already been given an opportunity to replead to satisfy those rules. Moreover they have not even responded to Fastow's motion to dismiss for failure to state a

claim under Rules 12(b)(6) and 9(b).  As noted, this Court "has the authority to consider the sufficiency of a complaint on its own initiative." *Landavazo v. Toro Co.*, 301 Fed. Appx. at 336, *citing Carroll v. Fort James Corp.*, 470 F.3d at 1177 (The district court may dismiss *sua sponte* "as long as the procedure is fair."). Although this Court did not provide notice and an opportunity to respond to Plaintiffs regarding the inadequacy of pleading of claims against Causey in particular, this Court may dismiss them "if the plaintiff has alleged its 'best case' and the dismissal [is] otherwise proper."  *Real Estate Innovations, Inc. v. Houston Ass'n of Realtors, Inc.*, No. 09-20868, 422 Fed. App'x 344, 352 (5th Cir. Apr. 15, 2011), *citing Lozano*, 489 F.3d at 643, and *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986)("At some point a court must decide that a plaintiff has had fair opportunity to make his case; if after that time, a cause of action has not been established, the court should finally dismiss the suit.").  *See also Barney v. Mukasey*, Civ. A. No. 3:06-CV-2064-L, 2008 WL 706917, *4 (N.D. Tex. Mar. 14, 2008)("Where the inadequacy of the complaint is apparent as a matter of law, the court may properly dismiss on its own initiative pursuant to Rule 12(b)(6). [citations omitted]").

**ORDER**

Accordingly, for the reasons stated above, the Court

ORDERS that Fastow's motion to dismiss for failure to state a claim under Rules 8, 12(b))6) and 9 is GRANTED with prejudice. Because the complaint also fails to state a claim against Causey for the same reasons, the Court

ORDERS that Causey is also dismissed with prejudice from this action.  This case is CLOSED.

**SIGNED** at Houston, Texas, this  19th  day of July , 2012.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE